**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF**
**ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| EMKO, INC. and BALKAN LOGISTICS GROUP, INC., | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Case No. 1:25-cv-5347 |
| v. | ) | |
| | ) | |
| JASMINA DIMITROV, | ) | |
| | ) | |
| *Defendant.* | ) | |

**JASMINA DIMITROV'S ANSWER AND**
**AFFIRMATIVE DEFENSE TO AMENDED COMPLAINT**

Defendant, JASMINA DIMITROV, by and through her attorneys, HOWARD L. TEPLINSKY and CAITLIN CHENUS of LEVIN GINSBURG, answers Plaintiffs' Amended Complaint as follows:

**NATURE OF THIS ACTION**

1.      This case arises from Jasmina's misappropriation and misuse of EMKO's and Balkan's trade secrets and other confidential and proprietary information.

**ANSWER: Deny.**

2.      This case also arises from Jasmina's civil theft and conversion of several of EMKO's and Balkan's trade secrets, confidential business and corporate records, financial records, including loan applications and related documents, corporate federal and state tax filings, certificates and lease agreements regarding real property, and other proprietary and confidential information.

**ANSWER: Deny.**

3.      To address these flagrant violations by Jasmina, EMKO and Balkan now bring these claims and seeks both injunctive and legal relief.

**ANSWER: Deny.**

## PARTIES

4.      Plaintiff EMKO, Inc. ("EMKO"), an Illinois corporation, was incorporated on September 8, 2014 and is headquartered in Burr Ridge, Illinois. EMKO is engaged in business within the field of trucking and transportation services, with a specialty in temperature-controlled hauling. Among other things, EMKO, Inc. handles logistics for its own trucking business and that of several related companies, including engaging in customer interactions and taking customer work orders, securing all permits, obtaining insurance policies and collecting revenue for customer orders. It was founded by Nicola "Nick" Dimitrov, who is also its President.

**ANSWER: Admit.**

5.      Plaintiff Balkan Logistics Group, Inc. ("Balkan Logistics"), an Illinois corporation, was incorporated on March 7, 2010 and is headquartered in La Grange, Illinois. It owns several trucks and trailers. Balkin Logistics was also founded by Nick Dimitrov, who is also its President.

**ANSWER: Admit.**

6.      Defendant Jasmina Dimitrov is an individual who resides at 709 79th St, Apt 104, Darien, IL, Illinois. Jasmina was employed as an independent contractor by EMKO from about December 2020 until about May 2022 and again between June 19, 2023 and March 15, 2024, when she voluntarily resigned. Jasmina and Nick Dimitrov were married on February 4, 2019 and Jasmina filed for divorce shortly after she voluntarily resigned from her roles for EMKO on May 28, 2024.

**ANSWER: Defendant denies that she voluntarily resigned from her role at EMKO.**

**Further, the term independent contractor is a legal conclusion to which no response is required.**

**To the extent a response is required, Defendant denies that she was an independent contractor**

**for EMKO. Defendant admits the remaining allegations in Paragraph 6.**

## JURISDICTION

7.      The Court has federal subject matter jurisdiction over Count I, a claim under the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.* ("DTSA"). *See* 28 U.S.C. § 1331.

**ANSWER: Admit.**

8.      This Court has supplemental jurisdiction over the other counts in this Complaint, because they form part of the same case or controversy as Count I. *See* 28 U.S.C. § 1367.

**ANSWER: Admit.**

9.      Personal jurisdiction and venue are proper in this judicial district because Jasmina is a resident of Darien, Illinois and a substantial part of the events or omissions giving rise to the claims in this case occurred in this district. *See* 28 U.S.C. § 1391.

**ANSWER: Admit.**

10.     EMKO and Balkan, whose principal places of business are located in northern Illinois, are damaged and continues to be damaged in Illinois by Jasmina's conduct. Jasmina's actions described herein were intentional and directed towards EMKO and Balkan, knowing they are located in Illinois.

**ANSWER: Deny.**

## FACTS

### A.      Nick Dimitrov and His Businesses

11.     Nick Dimitrov, a resident of La Grange, Illinois, was born and raised in the Republic of North Macedonia where his father, an experienced truck driver, founded a trucking company named EMKO. Later Mr. Dimitrov joined the company. In 2007, the family closed the Macedonian EMKO and Mr. Dimitrov moved to the United States as an exchange student and working at Disney World in Orlando, Florida.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

12.     In August 2007, Mr. Dimitrov moved to Chicago and has resided in the Chicago region ever since.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

13.     After obtaining a commercial driver's license, Mr. Dimitrov began driving a truck, which he did for about five years.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

14.     In March 2010, Mr. Dimitrov founded Balkan Logistics. Through Balkan Logistics, Mr. Dimitrov began purchasing trucks.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

15.     Mr. Dimitrov worked as an operations manager at strategic transportation and logistics company Co Lines, Inc. from 2012 to 2014. After he left that company, Mr. Dimitrov founded EMKO, reviving his family's long-time trucking business in Macedonia by using its name for his new venture. Founded in September, 2014, EMKO started its tucking services business initially using 5 trucks Mr. Dimitrov had previously purchased through Balkan Logistics.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

16.     EMKO grew rapidly during the next decade. By 2019, five years after its founding, EMKO's gross revenue was more than $4 million. Two years later, the company's gross revenue more than doubled. Revenue for 2024 reached almost $9.3 million.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

17.     The company now boasts an operating fleet of more than 50 trucks, with most owned and leased to EMKO by Balkan Logistics and the balance owned directly by EMKO. EMKO has an office staff of about thirty employees. As president of EMKO, Mr. Dimitrov coordinates the activities of the office staff and about 50 truck drivers.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

18.     EMKO provides a type of specialized trucking involving the temperature-controlled transportation of goods. This includes pharmaceutical goods, with Pfizer Inc. as a primary client, as well as other temperature-sensitive products like frozen foods, produce, fresh meat, ice cream, etc. EMKO optimized various organizational structures and introduced cutting-edge technology for precise tracking and temperature maintenance during transit.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

19.     As the head of operations, Mr. Dimitrov ensures the timely and efficient delivery of pharmaceuticals and other goods. As an expert in logistics, he oversees all aspects of EMKO's operations, addressing any issues that arise to ensure seamless delivery of customer's products around the clock.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

20.     During the past decade, EMKO has established a loyal customer base and developed significant good will through its proven dedication and provision of these specialized services.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

21.     During the COVID 19 pandemic, EMKO's track record enabled it to attract leading companies such as Pfizer and Wal-Mart, with which it entered into lucrative contracts. EMKO also entered into contracts with other trucking companies, such as Knight-Swift, through which EMKO would provide the specialized services that are its expertise and which these other companies cannot efficiently and effectively provide themselves.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

22.     In December 2021, EMKO entered into an exclusive partnership agreement with EMKO OH Macedonia, located in Macedonia. Through this business arrangement, in just a few years the partnership employed over 35 office people in two different cities in Macedonia.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

23. To maximize their security and secrecy, many of EMKO's and Balkan's most important corporate and business records were kept in a numeric-combination safe located in a secure room in the basement of Mr. Dimitrov's home in LaGrange, Illinois.

**ANSWER: Deny.**

24. Mr. Dimitrov was the only person who had authorized access to the safe. Mr. Dimitrov never provided Jasmina the numeric combination to the safe and is unaware how she learned of the combination.

**ANSWER: Defendant admits that Mr. Dimitrov never provided her with the numeric combination to the safe. Further answering, Defendant denies learning the safe's combination and further denies accessing the safe. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 24.**

25. Locating the safe at Mr. Dimitrov's home was deemed a more secure option than the corporate office given the number of drivers passing through the office and fact that the office was cleaned every night by different people.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

26. Documents kept in the safe included all of EMKO's and Balkan's important tax and financial documents; customer contracts; loan documents; personnel documents, including performance reviews; inter-company agreements; leases; tax deed certificates; EMKO's stock portfolio; proprietary strategic planning documents, including annual targets and critical customer information; and other proprietary and trade secret information.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

**B.      Jasmina's Relationships with Nick Dimitrov and EMKO.**

27. Nick Dimitrov and Jasmina Dimitrov were married on February 4, 2019.

**ANSWER: Admit.**

28. EMKO engaged Jasmina as an independent contractor from December 2020 through May 2021. During this time, Jasmina provided assistance to the office staff, processing invoices and facilitating the processing of driver paychecks.

**ANSWER: The term independent contractor is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that she was an independent contractor for EMKO. Defendant admits the remaining allegations in Paragraph 28.**

29.     EMKO re-engaged Jasmina as an independent contractor on June 19, 2023 to conduct similar functions.

**ANSWER: The term independent contractor is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that she was an independent contractor for EMKO. Defendant admits the remaining allegations in Paragraph 29.**

30.     Jasmina voluntarily resigned on March 15, 2024.

**ANSWER: Deny.**

31.     Jasmina was never authorized by Mr. Dimitrov or by anyone else at either EMKO or Balkan to access the safe or its contents.

**ANSWER: Admit.**

32.     Sometime around March 2024, Nick and Jasmina began having marital problems, and Jasmina filed for divorce on May 28, 2024. The divorce proceedings, which have been contentious and involved improper use of the materials that were among the contents of the safe, are ongoing.

**ANSWER: Defendant admits that she filed for divorce on May 28, 2024 and that the divorce proceedings have been contentious. Defendant denies the remaining allegations in Paragraph 32.**

C.     **Jasmina's Conversion of EMKO's and Balkan's Corporate and Business Documents and Trade Secret Misappropriation**

33.     Sometime after she resigned as an independent contractor for EMKO in March 15, 2024, Jasmina accessed the safe in the basement of the Dimitrov's home without authorization and without the knowledge of Nick Dimitrov or EMKO.

**ANSWER: Deny.**

34.     On information and belief, Jasmina made this authorized access to the safe sometime in April or early May, 2024 for the purpose of extracting all of EMKO's and Balkan's confidential and proprietary corporate and business records and using them for her personal benefit.

**ANSWER: Deny.**

35.     Jasmina removed every single document from the safe, leaving the safe completely empty.

**ANSWER: Deny.**

6

36.    The last time Mr. Dimitrov accessed the safe prior to Jasmina's unauthorized access was early March 2024, when he added some tax documents belonging to EMKO and Balkan to the other confidential documents stored in the safe.

**ANSWER: Deny.**

37.    Among the documents that Jamina removed from the safe, without authorization or justification were the following:

- U.S. and State Tax records;

- Financial Records, including balance sheets and income statements;

- Important contracts between EMKO and Balkan and their respective current and former contractors and customers, including EMKO's agreements with Walmart;

- Business records related to contracts between EMKO and Balkan and their respective current and former contractors, including records containing personal identification information for the current and former contractors;

- Loan Applications and related materials completed by EMKO and Balkan;

- Property Deed Certificates for various properties;

- Tax Lien Certificates for various properties;

- Loan agreements and related documents for loans made to EMKO by J.P. Morgan Chase Bank, Mitsubishi HC Capital America, US Bank, and M&K Financial;

- Loan agreements and related documents for loans made to Balkan Logistics by River Valley Capital Commercial Credit Group, Continental Bank, Crossroads Equipment Lease and Finance, Transportation Alliance Bank, Inc., and JP Morgan Chase Bank;

- A loan agreement for a loan from Balkan Logistics to OND 2007, LLC;

- OND's lease agreement with Transport Properties, LLC (guaranteed by EMKO);

- EMKO's agreements with various vendors and business partners, including Compass Funding Solutions and Tru Funding;

- EMKO's management agreement with EMKO OH Macedonia;

- EMKO's stock portfolio;

- EMKO Parties' strategic planning documents, including annual targets

- EMKO Parties' personnel documents, including performance reviews, formulas on employee bonuses if they reach targets, etc.

- Shareholder loan agreements

**ANSWER: Deny.**

38. Most of these documents contain confidential, proprietary and even trade secret information that provides EMKO and Balkan a competitive advantage in the marketplace and is not known outside of EMKO and Balkan. Accordingly, EMKO and Balkan ensured that the documents containing such information was stored in the most secure location available to them - the combination safe located a secured room in the basement of Mr. Dimitrov's home.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

39. As noted above, only Nick Dimitrov was authorized by EMKO and Balkan to have access to the safe and to these confidential, proprietary, and trade secret information embodied in these corporate records and business documents.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

40. EMKO and Balkan made other efforts to maintain the confidentiality of its customer and vendor-related information, trade secrets, and other confidential and proprietary information through a variety of other means, including:

    (a)     limiting access to confidential information on a need to know basis;

    (b)     utilizing computer and database passwords for office staff;

    (c)     limiting access to offices that may contain confidential information;

    (d)     monitoring who is given access to confidential information;

    (e)     employing a 2-factor authentication process for email and internal communications systems (*i.e.*, Ring Central system facilitating communications between EMKO and its drivers) the user credentials for which can only be approved Mr. Dimitrov; and

    (f)     a requirement that all passwords and security systems be changed anytime an employee with managerial responsibilities leaves the company.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

41. Armed with wrongfully retained confidential and proprietary information and trade secrets from EMKO and Balkan, a former EMKO employee, such as Jasmina, could severely damage EMKO's and Balkan's competitive advantage in the marketplace and diminish or destroy valuable relationships EMKO and its affiliates have developed with its customers, vendors and and/or business partners.

**ANSWER: Defendant denies that she "was armed" with the information. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 41.**

D. **Jasmina Misuses EMKO's and Balkan's Misappropriated Corporate and Business Documents and Trade Secrets to Assist a Competitor Owned by Her Romantic Partner**

42. Jamina has close, romantic relations with Vlatko Stoimenovski, the owner of Lupus 7, Inc., a directly competitive trucking company located in Lemont, Illinois. On information and belief, Lupus7 also has opened a competitive trucking company in Macedonia.

**ANSWER: Defendant denies that she has close, romantic relations with Vlatko Stoimenovski. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in Paragraph 42.**

43. On information and belief, there is nothing but injunctive relief in this legal action that could prevent Lupus 7 from continuing to benefit from Jasmina sharing EMKO's and Balkan's confidential, proprietary, and trade secret information with the owner of Lupus 7. Such confidential, proprietary and trade secret information has and could continue to provide Lupus 7 with a competitive edge relative to EMKO and Balkan.

**ANSWER: Deny.**

44. Both Mr. Dimitrov, personally, and EMKO and Balkan, through their attorneys, have requested that Jasmina and her divorce attorney both return the misappropriated information and agree not to use it for any unauthorized purpose. Thus far, Jasmina and her attorney have not agreed to these requests.

**ANSWER: Defendant admits that she and her attorney have not agreed to the requests. Defendant denies that she has possession of misappropriated information.**

E. **Jasmina's Use of the Misappropriated Materials in the Divorce Proceedings with Mr. Dimitrov**

45. To the contrary, on information and belief, Jasmina provided some or all of the documents she stole from the safe to her divorce attorney and has used some of the information contained in the purloined EMKO Party documents in court filings, including, among other items, copies of Tax Lien Certificates, information about gold bars purchased by EMKO. And confidential account information from Chase Bank.

**ANSWER: Deny.**

46. Mr. Dimitrov first learned of Jasmina's theft of EMKO's and Balkan's confidential and proprietary customer information and trade secrets when Jasmina's divorce attorney filed legal documents in the divorce proceeding which referenced information contained in some of the stolen documents.

**ANSWER: Deny.**

47. After learning of this, Mr. Dimitrov's counsel in the divorce case requested the return of the misappropriated property but neither Jasmina nor her attorney complied with the request.

**ANSWER: Defendant admits that neither she nor her attorney returned "misappropriated" property. Defendant denies the remaining allegations in Paragraph 47.**

48. Jasmina's divorce attorney has wrongfully filed (or used information from) confidential documents between Mr. Dimitrov and his attorneys that are subject to the attorney-client privilege.

**ANSWER: Deny.**

49. On August 6, 2024, EMKO, Balkan, and other related companies sent a letter to Jasmina's divorce counsel again demanding the immediate return of all of the documents Jasmina stole from the safe and again demanding that Jasmina cease and desist using any of the information for her own advantage. Jasmina's counsel rejected that demand.

**ANSWER: Defendant denies that she stole documents from the safe. Defendant admits the remaining allegations in Paragraph 49.**

50. Jasmina and her attorney still failed to comply. Over the next several months, the parties then had discussions more generally concerning their legal disputes, discussions that ultimately led to no resolution.

**ANSWER: Defendant admits that she did not comply with Plaintiffs' demand and further admits that she did not turn over documents that she was never in possession of. Defendant admits the remaining allegations in Paragraph 50.**

51. Having made reasonable attempts to persuade Jasmina to return the stolen documents and to staunch her unlawful use and disclosure of EMKO's and Balkan's valuable confidential and proprietary customer and vendor information and trade secrets only to see Jasmina ignore these efforts, EMKO and Balkan now bring this action to protect their legitimate business interests.

**ANSWER: Deny.**

F. **Jasmina's Intentional Interference with EMKO's Contractual Relations and EMKO's Prospective Economic Advantage**

52. As noted above, one of EMKO's most lucrative customers has been Knight-Swift, the fourth largest trucking company in the United States. On information and belief, Knight-Swift has roughly 19,000 trucks, 58,000 trailers and employs 24,000 people. It had gross revenue of about $7.5 billion in 2023.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

53.     In 2021, EMKO did business with Knight-Swift worth about $146,000.00. In January 2022, EMKO entered into a contract with Knight-Swift, becoming EMKO's biggest single customer that year, garnering gross revenues of almost $2 million.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

54.     In developing its relationship with Knight-Swift, EMKO worked closely with Jovanka Gjeorgieva (who was originally from Macedonia), Knight-Swift's 2019 and 2022 Broker of the Year. EMKO expected to continue developing its business relationship with Knight-Swift in the years to come, to their mutual economic advantage.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

55.     Jasmina knew of EMKO's contractual relationship with Knight-Swift and knew that EMKO had reasonable expectations of further developing its business relations with Knight-Swift to its advantage.

**ANSWER: Defendant admits that she was aware that EMKO and Knight-Swift did business, the extent, or details of which Defendant denies having knowledge. Defendant denies the remaining allegations in Paragraph 55.**

56.     On information and belief, and unbeknownst to Mr. Dimitrov at the time, in one or more private telephone conversation(s) between Ms. Gjeorgieva and Jasmina, Jasmina began telling Ms. Gjeorgieva numerous blatant falsehoods and misstatements about the conduct and character of Mr. Dimitrov, designed to tarnish his personal and professional reputation. Jasmina continued making blatant falsehoods and misstatements about the conduct and character of Mr. Dimitrov in a private conversation during a visit of Ms. Gjeorgieva made to Chicago in October 2023.

**ANSWER: Deny.**

57.     On information and belief, Jasmina repeated these blatant falsehoods and misstatements to Ms. Gjeorgieva about the conduct and character of Mr. Dimitrov in subsequent telephone calls.

**ANSWER: Deny.**

58.     Mr. Dimitrov first became aware of these falsehoods and misstatements around June 27, 2024, after Mr. Dimitrov disclosed to Ms. Gjeorgieva that he was getting divorced from Jasmina. After learning about the divorce, Ms. Gjeorgieva wanted to let Mr. Dimitrov know what was happening in the conversations with Jasmina.

**ANSWER: Deny.**

59.     [blank in original]

60.     On information and belief, Jamina made such falsehoods and misstatements to Ms. Gjeorgieva without any justification and knowing them to be untrue.

**ANSWER: Deny.**

61.     On information and belief, Jamina made such falsehoods and misstatements to Ms. Gjeorgieva specifically to hurt Mr. Dimitrov's personal and professional reputation and to persuade Ms. Gjeorgieva, and Knight-Swift to diminish or even terminate its contractual relations with EMKO.

**ANSWER: Deny.**

62.     On information and belief, based on Jasmina's misstatements and untruths, Ms. Gjeorgieva caused Knight-Swift to diminish its business with EMKO in 2023. So, while EMKO had nearly $2 million of business with Knight-Swift in 2022, in 2023, the revenue from Knight-Swift dwindled to about $335,000 and has continued to suffer since. In 2024, the amount was $62,664, and revenue is still on the decline in 2025.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny that Knight-Swift diminished its business with EMKO in 2023, that while EMKO had nearly $2 million of business with Knight-Swift in 2022, in 2023, the revenue from Knight-Swift dwindled to about $335,000 and has continued to suffer since, and that in 2024, the amount was $62,664, and revenue is still on the decline in 2025. Defendant denies the remaining allegations in Paragraph 62.**

## CAUSES OF ACTION

### COUNT I: FEDERAL DEFEND TRADE SECRETS ACT

63.     EMKO and Balkan incorporate by reference Paragraphs 1 through 62 as if fully set forth herein.

**ANSWER: Defendant realleges and incorporates by reference her answers to Paragraphs 1 through 62 as if fully set forth herein.**

64.     The actions as described above, constitute violations of one or more provisions of the Federal Defend Trade Secrets Act, 18 U.S. Code § 1836(b) ("DTSA").

**ANSWER: Deny.**

65.     DTSA applies because EMKO's and Balkan's trade secrets are related to specialized trucking and freight service services used in, and intended for use in, interstate

commerce. The specialized trucking and freight services to which the trade secrets relate are offered by EMKO and Balkan to their customers and prospective customers across the United States.

**ANSWER: The allegations in Paragraph 65 are legal conclusions rather than well-pleaded statements of fact. To the extent an answer is required, Defendant denies the allegations in Paragraph 65.**

66.     By engaging in the conduct described here, Jasmina has misappropriated and unlawfully used and/or disclosed EMKO's and Balkan's trade secrets related to specialized trucking and freight services used in, or intended for use in, interstate commerce.

**ANSWER: Deny.**

67.     The proprietary information and trade secrets Jasmina accessed without authorization and purloined from the safe when she was no longer associated with EMKO or Balkan include financial data; business information; tax records, vendor and customer information, vendor and customer contracts and related information, loan agreements and related information, lease agreements, and other internal operations information.

**ANSWER: Deny.**

68.     The various items of information to which Jasmina accessed without authorization and purloined and which she made use of are trade secrets under DTSA. 18 U.S.C. § 1839(3).

**ANSWER: Deny.**

69.     EMKO and Balkan have taken reasonable measures to keep their trade secret information secret by, among other things:

(a)     Locking their confidential and proprietary information and trade secrets in a combination safe stored in a secure location;

(b)     limiting access to confidential information on a need to know basis;

(c)     utilizing computer and database passwords for office staff;

(d)     limiting access to offices that may contain confidential information;

(e)     monitoring who is given access to confidential information.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

70.     Additionally, to further protect its confidential information, after learning of Jasmina's wrongful conduct, Mr. Dimitrov's divorce counsel and EMKO's and Balkan's counsel both demanded that Jasmina cease using their proprietary information and trade secrets and demanded their return forthwith.

**ANSWER: Deny.**

71.     EMKO's and Balkan's internal financial, tax, loan, operations, vendor, and customer related trade secret information is sufficiently secret to derive independent economic value due to not being generally known to, and not being readily ascertainable through proper means, by other persons who can obtain economic value from its disclosure and use, such as EMKO's and Balkan's competitors.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

72.     Without authorization, Jasmina misappropriated and used EMKO's and Balkan's trade secrets in a willful and malicious manner and with a deliberate intent to injure EMKO and Balkan and their owner and to improve her own financial gain.

**ANSWER: Deny.**

73.     At the time she purloined the documents from the safe, Jasmina knew that the information contained therein was confidential and propriety to EMKO and Balkan which was why they were stored in a combination locked safe in the first place.

**ANSWER: Deny.**

74.     Despite EMKO's and Balkan's efforts to cause Jasmina to cease and desist use of the confidential and trade secret information and to return the stolen documents, Jasmina has continued her unlawful possession and use of EMKO's and Balkan's confidential information and trade secrets.

**ANSWER: Deny.**

75.     As a consequence of the foregoing, EMKO and Balkan have suffered and will continue to suffer irreparable harm, injury, and loss.

**ANSWER: Deny.**

76.     Pursuant to DTSA, actual or threatened misappropriation of trade secrets can be enjoined.

**ANSWER: The allegations in Paragraph 76 are legal conclusions rather than well-pleaded statements of fact. To the extent an answer is required, Defendant denies the allegations in Paragraph 76.**

77.     Unless enjoined, EMKO and Balkan will continue to suffer irreparable harm that cannot be remedied through money damages.

**ANSWER: Deny.**

78.     As a direct and proximate result of the conduct of Jasmina, EMKO and Balkan are entitled to actual damages in an amount to be determined at trial. The acts and conduct of Jasmina

were and continue to be willful and malicious, justifying an award of exemplary damages and attorneys' fees.

**ANSWER: Deny.**

## COUNT II: ILLINOIS TRADE SECRETS ACT

79. EMKO and Balkan incorporate by reference Paragraphs 1 through 78 as if fully set forth herein.

**ANSWER: Defendant realleges and incorporates by reference her answers to Paragraphs 1 through 78 as if fully set forth herein.**

80. As noted in Count I, EMKO and Balkan have confidential and proprietary information that constitutes trade secrets under the Illinois Trade Secrets Act, 75 ILCS 1065 *et seq*. ("ITSA"). Such information derives independent value from not being generally known to EMKO's and Balkan's competitors. Further, such information is not readily ascertainable through proper means by EMKO's and Balkan's competitors.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

81. EMKO and Balkan undertook reasonable efforts and instituted reasonable precautions to protect the confidentiality of its proprietary, confidential and trade secret information.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

82. Jasmina has misappropriated and wrongfully used and/or disclosed EMKO's and Balkan's trade secrets in violation of ITSA.

**ANSWER: Deny.**

83. Jasmina's misappropriation and wrongful use and/or disclosure exposes EMKO and Balkan to immediate and irreparable harm for which there is no adequate remedy at law.

**ANSWER: Deny.**

84. Jamina's misappropriation and wrongful use and/or disclosure has also caused and will continue to cause EMKO and Balkan to suffer monetary damages and legal costs to be determined at trial.

**ANSWER: Deny.**

## COUNT III: CONVERSION AND TRESPASS TO CHATTELS

85. EMKO and Balkan incorporate by reference Paragraphs 1 through 84 as if fully set forth herein.

**ANSWER: Defendant realleges and incorporates by reference her answers to Paragraphs 1 through 84 as if fully set forth herein.**

86.     By taking, without authorization, the confidential and proprietary documents from the safe, and by refusing to return them to EMKO and Balkan, Jasmina has wrongful and unlawful possession, control, dominion, or ownership over EMKO's and Balkan's property.

**ANSWER: Deny.**

87.     Those documents are the exclusive property of EMKO and Balkan and they were generated or obtained in connection with their respective businesses; consequently EMKO and Balkan have the exclusive right to the immediate possession, control and ownership of the stolen documents.

**ANSWER: Deny.**

88.     Through their counsel, EMKO and Balkan have demanded that Jasmina immediately return the stolen documents, but she has refused.

**ANSWER: Defendant denies that she is in possession of stolen documents. Defendant admits the remaining allegations in Paragraph 88.**

## COUNT IV: TORTIOUS INTERFERENCE WITH
## CONTRACTUAL RELATIONS (BY EMKO ONLY)

89.     EMKO incorporates by reference Paragraphs 1 through 88 as if fully set forth herein.

**ANSWER: Defendant realleges and incorporates by reference her answers to Paragraphs 1 through 88 as if fully set forth herein.**

90.     The contractual relationship between EMKO and Knight-Swift relating to EMKO's trucking and freight services is valid and enforceable.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

91.     Jasmina was aware of the existence of the contractual relationship between EMKO and Knight-Swift and of the importance of this lucrative contractual relationship to EMKO's business.

**ANSWER: Deny.**

92.     Despite this, Jasmina intentionally and unjustifiably interfered with that contractual relationship by repeatedly telling falsehoods and misstatements about the conduct and character of EMKO's president, knowing they were untrue, to Jovanka Gjeorgieva, a high-ranking representative of Knight-Swift and EMKO's primary contact at the company, with the intent and expectation that Knight-Swift would diminish or even terminate its business with EMKO.

**ANSWER: Deny.**

93.     Jasmina's intentional interference has severely damaged the goodwill formerly associated with the contractual relationship between EMKO and Knight-Swift.

**ANSWER: Deny.**

94.     As a direct and proximate result of her intentional interference, Knight-Swift significantly diminished its business with EMKO. Notably, Knight-Swift diminished its business despite there being no issues with the services provided by EMKO. Rather, on information and belief, Knight-Swift reduced its business based entirely on the falsehoods and misstatements Jasmina relayed to Ms. Gjeorgieva. As a result of that diminishment, EMKO has seen its revenue for trucking and freight services on behalf of Knight-Swift fall from almost $2 million in 2022 to about $335,000 in 2023, more than an eighty percent reduction.

**ANSWER: Deny.**

95.     Jasmina's intentional interference with EMKO's contractual relations has caused and will continue to cause EMKO damages in an amount to be determined at trial.

**ANSWER: Deny.**

96.     Jasmina's interference, as alleged herein, was willful and malicious and done in reckless disregard for EMKO's contractual rights, and therefore entitles EMKO to an award of exemplary and punitive damages.

**ANSWER: Deny.**

### COUNT V: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE (BY EMKO ONLY)

97.     EMKO incorporates by reference Paragraphs 1 through 96 as if fully set forth herein.

**ANSWER: Defendant realleges and incorporates by reference her answers to Paragraphs 1 through 96 as if fully set forth herein.**

98.     EMKO had and has a reasonable expectancy for an increasingly expansive and profitable business relationship with Knight-Swift, the fourth-largest trucking company in the United States.

**ANSWER: Defendant lacks sufficient knowledge to admit or deny the allegations.**

99.     Jasmina had direct knowledge of EMKO's expectancy and the efforts and investments made by EMCO to develop its business relationship with Knight-Swift.

**ANSWER: Deny.**

100.     Jasmina intentionally and unjustifiably interfered with EMKO's expectancy by repeatedly telling falsehoods and misstatements about the conduct and character of EMKO's

president, knowing they were untrue, to Jovanka Gjeorgieva, a high-ranking representative of Knight-Swift and EMKO's primary contact at the company, with the intent and expectation that Knight-Swift would diminish or even terminate its business with EMKO.

**ANSWER: Deny.**

101. As a result of her interference with EMKO's expectancy, Jasmina has intentionally and irreparably damaged the goodwill associated with EMKO's relationship with Knight-Swift.

**ANSWER: Deny.**

102. As a direct and proximate result of Jasmina's interference, EMKO was and is currently being deprived of significant revenues and other business opportunities from Knight-Swift.

**ANSWER: Deny.**

103. Jasmina's intentional interference with EMKO's expectancy has caused and will continue to cause EMKO damages in an amount to be determined at trial.

**ANSWER: Deny.**

104. Jasmina's interference, as alleged herein, was willful and malicious and done in reckless disregard for EMKO's rights, and therefore entitle EMKO to an award of exemplary and punitive damages

**ANSWER: Deny.**

## **AFFIRMATIVE DEFENSE**

1. Plaintiffs filed this lawsuit for an improper purpose and are, therefore, guilty of unclean hands. Accordingly, they are not entitled to any of the equitable relief they seek.

2. Plaintiff Nicola "Nick" Dimitrov is President of EMKO, Inc. ("EMKO"). Nick Dimitrov is also President of Balkan Logistics Group, Inc. ("Balkan"). Nick Dimitrov and Jasmina Dimitrov are, at least for now, husband and wife. On May 28, 2024, Jasmina filed a Petition for Dissolution of Marriage from her husband, Nick. The case is captioned *Jasmina Dimitrov v. Nicola Dimitrov*, 2024 D 004012.

3. Jasmina was employed at EMKO on and off from October 2018 to March 2024 as its bookkeeper. In order to perform the necessary duties of her job, Jasmina was given unfettered access to the corporation's books and records. She had access to tax returns, contracts, A/R reports, strategic

planning reports, rate reports, balance sheets, financial statements, income statements, customer contracts, loan applications, loan agreements, lease agreements, vendor agreements and shareholder loan agreements.

4.     The parties' divorce proceedings have been contentious. The judge presiding over the divorce has already entered orders in Jasmina's favor a) requiring the payment of interim maintenance, b) requiring that Nick pay Jasmina's attorneys' fees, c) requiring that Nick produce the "confidential" documents that he alleges Jasmina misappropriated. Nick has had multiple sets of attorneys in the divorce case.

5.     One of the issues at the forefront of the proceedings has been the value of Nick's interest in his businesses and various investments. In fact, Jasmina's divorce attorney formally requested copies of all of the documents relating to the value of Nick's businesses, including the documents set forth herein, and Nick's response has been less than forthcoming. Nick moved to quash the document subpoenas issued by Jasmina's divorce attorney, but his motion to quash was denied. As a result of Nick's failure to produce many of the requested documents, the judge presiding over the parties' divorce specifically ordered Nick to produce the documents that Nick alleges Jasmina misappropriated. Regardless, each and every document that plaintiff allegedly needs to protect are relevant to an overarching issue in the parties' divorce, calling in to serious question plaintiff's actual motive in bringing this lawsuit since a Circuit Court judge has already ruled that Jasmina is entitled to the documents.

6.     Jasmina did not access the safe that Nick references in the complaint. The safe that Nick refers to is kept in a particular room where a video camera recording all movement in the location is present. Despite Nick's wild accusations – the same accusations that he has been making for over one year – he has never produced a recording of Jasmina allegedly accessing the safe.

7.     Nick alleges that Jasmina is or was having a relationship with an individual who is a competitor in Nick's industry. The allegation is entirely false. The individual subject of Nick's wild accusation is a family friend with whom Jasmina and their children live, along with the individual's wife and children. Jasmina moved in with the family after Nick cut off her access to funds and she and her children had nowhere else to live.

8.     Nick's improper purpose for bringing this action is further evidenced by the fact that many of the documents that he accuses Jasmina of stealing are public records of which anyone can obtain access. For example, Nick demands the return of "property deed certificates," and "tax lien certificates." Those documents are not confidential and are publicly available.

9.     Nick has manufactured the allegations in this case solely to attempt to obtain an advantage in the divorce proceeding. He can seek the same injunctive relief in his currently pending divorce proceeding. The judge in that case, however, has already determined that the documents are relevant to the party's divorce and has ordered their production.

10.     Because of Nick's improper motive in bringing this lawsuit, Nick is guilty of unclean hands. Nick's claims for equitable relief are barred.

WHEREFORE, Jasmina Dimitrov respectfully requests that the Court enter judgment in her favor and against Plaintiff on counts 1 through 6, award her costs and attorneys' fees, and grant such further relief that the Court deems just and proper.

Dated: December 12, 2025                    Respectfully submitted,

                                            **JASMINA DIMITROV**

                                            By:  /s/ *Howard L. Teplinsky*
                                                     One of Her Attorneys

Howard L. Teplinsky (No. 6197501)
Caitlin Chenus (No.6343085)
LEVIN GINSBURG
180 N. LaSalle St., Suite 2750
Chicago, IL 60601
***hteplinsky@levinginsburg.com***
***cchenus@levinginsburg.com***

<u>CERTIFICATE OF SERVICE</u>

      I, Howard L. Teplinsky, an attorney, hereby certified that I caused a true and correct copy of the foregoing ***Jasmina Dimitrov's Answer and Affirmative Defense to Amended Complaint*** on all parties registered to receive notice through the court: s ECF filing system on **December 12, 2025**.

      */s/ Howard L. Teplinsky*